**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ELIZABETH DOUGHERTY and** | : |
| **NEIL J. DOUGHERTY,** | : |
| | : |
| **Plaintiffs,** | : |
| | : |
| **v.** | :   **3:20-CV-2166** |
| | :   **(JUDGE MARIANI)** |
| **AMERICAN STATES** | : |
| **INSURANCE COMPANY,** | : |
| | : |
| **Defendant.** | : |

**MEMORANDUM OPINION**

**I. INTRODUCTION AND PROCEDURAL HISTORY**

On September 4, 2020, Plaintiffs Elizabeth Dougherty and Neil J. Dougherty filed the

above-captioned action in the Court of Common Pleas of Luzerne County.  (Doc. 1-3).  The

Complaint stems from a motor vehicle accident involving Elizabeth Dougherty on January 6,

2017, and alleges claims of Breach of Contract (Count I) and Bad Faith (Count II), both

arising out of Mrs. Dougherty's underinsured motorist coverage, and a claim by Neil

Dougherty for Loss of Consortium (Count III).  (Doc. 1-3). On November 19, 2020,

Defendant American States Insurance Company (hereinafter "American States") removed

this action to federal court on the basis of diversity jurisdiction.  (Doc. 1).  Defendant

thereafter filed a Motion to Dismiss Plaintiffs' Claim for Bad Faith (Doc. 3) and

accompanying brief (Doc. 4), to which Plaintiffs filed a brief in opposition (Doc. 6).

Defendant's motion to dismiss has been fully briefed and the motion is ripe for

disposition. For the reasons set forth below, the Court will deny Defendant's Motion to

Dismiss Plaintiffs' Claim for Bad Faith (Doc. 3).

## II. FACTUAL ALLEGATIONS

Plaintiff's Complaint (Doc. 1-3) alleges the following facts which, for the purposes of

resolving Defendant's Motion to Dismiss, the Court takes as true:

On or about January 6, 2017, Plaintiff Elizabeth Dougherty was operating a 2013

Toyota Sienna, which was insured by Plaintiffs under a policy of insurance issued by

Defendant. (Doc. 1-3, ¶¶ 3, 4).[1]  On that day, a 2010 Chevrolet Silverado operated by

Eileen Jones, "violently collided" with Mrs. Dougherty's vehicle "in a head on collision

caused solely by the . . . negligence, carelessness, and recklessness of the tortfeasor,

Eileen Jones." (*Id*. at ¶ 9).  As a direct result of this incident, Plaintiff sustained a number of

"severe, painful, permanent, and disabling injuries." (*See id*. at ¶ 11(a)-(oo)).  As a result of

the injuries, Plaintiff "has been rendered sick, sore and disabled and has sustained severe

physical, emotional and mental pain, discomfort and distress, all of which have required

medical care and treatment." (*Id*. at ¶ 12).  Eileen Jones' conduct has also caused Plaintiff

to suffer "physical and mental pain, discomfort inconvenience, [and] anxiety", all of which

---

[1] Although "Safeco Insurance" is the named Defendant in this action, and Plaintiff alleges that her vehicle was insured under a policy issued by Safeco, the parties agree that "American States Insurance Company" issued the applicable insurance policy (*see* Doc. 10, at ¶ 1.3) and that American States Insurance Company is the proper defendant in this matter.  Every document filed in this action, with the exception of the Complaint, lists American States Insurance Company as the Defendant.

may continue into the future, and the conduct further has "obliged" Plaintiff "to receive and undergo medical attention and care" and Plaintiff "has been obligated to expend and incur various expenses for the injuries she sustained, and will be obliged to continue to expend such sums or incur such expenses for an indefinite period of time." (Doc. 1-3, ¶¶ 13, 14). Plaintiff states that her injuries are "of a continuing and permanent nature and that she will, therefore, continue to suffer in the future and require additional medical care and treatment." (*Id*. at ¶ 15). Plaintiff further has sustained a loss of earnings and diminishment of her earnings/earning capacity and the loss of "enjoyments of life." (*Id*. at ¶¶ 16, 17).

The 2010 Chevrolet, operated by Jones, was insured by SafeAuto Insurance Company on the date of the vehicular collision. (Doc. 1-3, ¶ 18). The bodily injury insurance limit under the SafeAuto policy for the collision was $15,000. (*Id*. at ¶ 19). Because the limits of available liability insurance for the 2010 Chevrolet are insufficient to compensate Elizabeth Dougherty, Jones was operating an underinsured motor vehicle. (*Id*. at ¶¶ 20, 21).

At all relevant times, Elizabeth Dougherty's Auto Policy with Defendant provided for $250,000 in underinsured motorist coverage. (Doc. 1-3, ¶ 22). At the time she elected to purchase this policy, Plaintiff elected to purchase bodily injury limits in an amount greater than the minimum coverage required by the Commonwealth of Pennsylvania. As a result of her election of bodily injury limits in an amount greater that the minimum coverage required by law, and of her purchase of underinsured motorist benefits, Dougherty paid, and Defendant accepted, the increased premium payments. (*Id*. at ¶¶ 24, 25).

Plaintiffs state that Jones' Chevrolet was an underinsured motor vehicle as defined in Dougherty's Auto Policy and that at all relevant times, the sum of all liability bonds or policies for the Chevrolet was less than the damages Dougherty is entitled to recover from Jones. (*Id*. at ¶¶ 26, 27).

Elizabeth Dougherty has fully complied with all terms, conditions, and duties imposed upon her by her Auto Policy. (Doc. 1-3, ¶ 29). Plaintiff has also "continually" provided medical records and reports to Defendant, "outlining her injuries, special damages, medical expenses, as well as evidencing her physical pain and suffering" and has cooperated with Defendant "in every way throughout the life of her claims." (*Id*. at ¶¶ 30, 31).

Plaintiffs allege that Defendant engaged in the following conduct with respect to Mrs. Dougherty's insurance claim, demonstrating bad faith:

a. Failing to properly investigate Plaintiff, Elizabeth Dougherty's claim upon notification of same;
b. Refusing to pay Plaintiff, Elizabeth Dougherty's claims without conducting a reasonable investigation based upon all available information;
c. Failing to promptly and objectively evaluate Plaintiff, Elizabeth Dougherty's claims;
d. Unreasonably delaying the objective and fair evaluation of Plaintiff, Elizabeth Dougherty's claim;
e. Causing unreasonably [*sic*] delay in all aspects of the handling of Plaintiff, Elizabeth Dougherty's claim;
f. Dilatory and abusive claims handling;
g. Conducting an unfair, unreasonable and dilatory investigation of Plaintiff, Elizabeth Dougherty's claims;
h. Failing to act in good faith to effectuate prompt, fair, and equitable settlement of Plaintiff, Elizabeth Dougherty's claim;
i. Ignoring competent and overwhelming medical evidence substantiating Plaintiff, Elizabeth Dougherty's injuries and resulting disability;

j.  Ignoring competent and overwhelming medical evidence that injuries the Plaintiff, Elizabeth Dougherty, sustained in the subject motor vehicle have not resolved.

(*Id*. at ¶ 42 (a)-(j)).

### III. STANDARD OF REVIEW

A complaint must be dismissed under Federal Rule Civil Procedure 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations, alterations, and quotations marks omitted).  In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Offs.*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted).  A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 231 n.14

(3d Cir. 2013) (internal citation, alteration, and quotation marks omitted). Thus, "the presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.'" *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.*

"Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer possibility that a defendant has acted unlawfully.'" *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal citation omitted) (first quoting *Twombly*, 550 U.S. at 556; then quoting *Iqbal,* 556 U.S. at 678). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* at 786-787 (quoting *Iqbal,* 556 U.S. at 679).

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## IV. ANALYSIS

Defendant American States' Motion to Dismiss asserts that Count II of Plaintiff's

Complaint (Bad Faith) must be dismissed because it "fails to allege any acts or omissions

sufficient to support an actionable insurance bad faith claim." (Doc. 4, at 4).   Defendant

asserts that Plaintiffs have only set forth "conclusory, boilerplate averments" in support of

their Bad Faith claim, and these factual allegations are insufficient to raise a plausible bad

faith claim. (*Id.* at 7).

The Pennsylvania legislature has created a statutory remedy for an insurer's bad

faith conduct, which reads as follows:

> In an action arising under an insurance policy, if the court finds that the insurer
> has acted in bad faith toward the insured, the court may take all of the following
> actions:
>> (1) Award interest on the amount of the claim from the date the claim
>> was made by the insured in an amount equal to the prime rate of interest
>> plus 3%.
>> (2) Award punitive damages against the insurer.
>> (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. Ann. § 8371.

"The standard for bad faith claims under § 8371 is set forth in *Terletsky v. Prudential*

*Property & Cas. Ins. Co.*, 437 Pa. Super. 108, 649 A.2d 680, 688 (1994), *appeal denied*,

540 Pa. 641, 659 A.2d 560 (1995)." *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230,

233 (3d Cir. 1997). *Terletsky* defined the term "bad faith" as follows:

> In the insurance context, the term bad faith has acquired a particular meaning:

> *Insurance.* "Bad faith" on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

*Terletsky*, 649 A.2d at 688 (quoting Black's Law Dictionary 139 (6th ed. 1990)). *See Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005) (predicting that the Pennsylvania Supreme Court would define "bad faith" according to the definition set forth in *Terletsky*). "[T]o recover under a claim of bad faith, the plaintiff must show that the defendant did not have a reasonable basis for denying benefits under the policy and that defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim." *Terletsky*, 649 A.2d at 688.

Here, Plaintiffs' Complaint contains sufficient factual allegations to raise their right to relief above the speculative level and to state a claim of bad faith.

Plaintiffs allege that Elizabeth Dougherty was in a vehicle accident in January of 2017 which resulted in a number of serious and ongoing injuries. (Doc. 1-3, ¶¶ 3, 9, 11, 12-17). The Complaint further alleges that the tortfeasor's vehicle was insured by SafeAuto Insurance Company on the date of the vehicular collision and the bodily injury insurance limit under that policy for the collision was $15,000. (*Id.* at ¶ 18,19). Drawing all reasonable inferences in favor of the plaintiffs, these allegations can plausibly infer that the tortfeasor's insurance was insufficient to fully compensate Mrs. Dougherty for her injuries.

Plaintiffs further allege that their Toyota involved in the collision had a policy of insurance issued by Defendant, and that this Auto policy provided for $250,000 in underinsured motorist coverage. (Doc. 1-3, ¶¶ 4, 22). Elizabeth Dougherty has fully complied with all terms, conditions, and duties imposed upon her by the Auto Policy, and she has "continually" provided medical records and reports to Defendant, "outlining her injuries, special damages, medical expenses, as well as evidencing her physical pain and suffering" and has cooperated with Defendant "in every way throughout the life of her claims." (*Id*. at ¶¶ 29-31). Nonetheless, despite Mrs. Dougherty's compliance, she alleges that Defendant failed to properly investigate her claim, refused to pay her but did not conduct a reasonable investigation, and failed to promptly and objectively evaluate her claim but instead delayed evaluating her claim. Plaintiff further alleges that Defendant's investigation of her claim was "unfair, unreasonable and dilatory" and that Defendant ignored the medical evidence substantiating her injuries and resulting disability. (*See id*. at ¶ 42 (a)-(j)).

The afore-stated factual allegations, when taken as true, raise a plausible claim that Defendant "did not have a reasonable basis for denying benefits under the policy and that defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim" *Terletsky*, 649 A.2d at 688.

For these reasons, although sparse with respect to the bad faith claim, the Complaint contains sufficient well-pleaded factual allegations to "nudge[ ]" Plaintiffs' claim "across the

9

line from conceivable to plausible," *Twombly*, 550 U.S. at 570.  *See e.g. Kelly v. Progressive Advanced Ins. Co.*, 159 F.Supp.3d 562, 564 (E.D.Pa. 2016) (finding Plaintiffs stated a bad faith claim under § 8371 where they "allege[d] that Progressive failed to pay their claims, make a reasonable settlement offer, investigate their claims properly, and consider medical and other documentation.").

## V. CONCLUSION

For the reasons set forth in this Memorandum Opinion, the Court will deny Defendant's Motion to Dismiss Plaintiffs' Claim for Bad Faith (Doc. 3).  A separate Order follows.

Robert D. Mariani
United States District Court Judge